IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM, et al. : | | CIVIL ACTION |
| v. : | | |
| MAN FINANCIAL INC., et al. | : | NO. 06-1944 |

**MEMORANDUM RE: UBS'S MOTION TO VACATE / WIND UP RECEIVERSHIP**

**Baylson, J.**                                                                                                   **September 25, 2007**

  This case involves an allegedly fraudulent futures trading scheme with investor losses estimated at almost $200 million. On Motion of the Commodities Future Trading Commission ("CFTC") for appointment of a receiver to investigate the allegations of fraud and to seek recovery of assets lost as a result of the alleged fraud, a Receiver was appointed for an allegedly fraudulent entity, Philadelphia Alternative Asset Management Company, LLC ("PAAMCo"), and its partners, affiliates or subsidiaries or related entities. The Receiver Ad Litem, Stephen J. Harmelin, Esq. ("RAL") is the Plaintiff in this action.

  Presently before the Court is a Motion by Defendant UBS Fund Services (Cayman), Ltd. ("UBS") to Vacate or Wind Up the Receivership (Doc. No. 342) as to one of PAAMCo's related entities – the Philadelphia Alternative Asset Fund, Ltd. (the "Offshore Fund").[1] Both the RAL and the CFTC (which the Court allowed to intervene in this action) oppose UBS's Motion.

**I.**  **Brief Factual Background and Procedural History**

  The Court will briefly summarize certain relevant facts. For more detailed descriptions of

---

[1] UBS refers to the Offshore Fund, *i.e.* Philadelphia Alternative Asset Fund, Ltd., as "PAAF".

the facts underlying this case, see Memoranda reported at 2006 WL 3791341, 2006 WL 2869532, and 2006 WL 2707397, as well as Memoranda filed on September 12, 2007.

PAAMCo was formed on July 22, 2002, by Paul M. Eustace ("Eustace"), who was PAAMCo's President and only principal. PAAMCo is a Delaware Limited Liability Company headquartered in King of Prussia, Pennsylvania. On or about May 28, 2004, Eustace established the hedge fund at issue in this litigation, the Offshore Fund, as a Cayman Islands corporation. On behalf of the Offshore Fund, Eustace hired UBS as the Offshore Fund's Fund Administrator. The Offshore Fund and UBS entered into an administration agreement on July 29, 2004.

On June 24, 2005, the Commodity Futures Trading Commission ("CFTC") brought suit (C.A. No. 05-2973) in this District against Eustace and PAAMCo, which was still controlled by Eustace, alleging various fraudulent acts. The CFTC requested that a Receiver be appointed to investigate the allegations and to seek recovery of assets belonging to the fund and its investors. Judge John R. Padova, to whom the case was originally assigned, appointed a Receiver for PAAMCo and its "partners, affiliates or subsidiaries, or related entities."

With the Receiver appointed in this Court, a court in the Cayman Islands found that liquidation of the Offshore Fund should occur in the Cayman Islands and appointed two individuals ("Joint Liquidators") to carry out that task. This Court approved a protocol for coordination between the Receiver and the Joint Liquidators.

During the course of the CFTC suit, Eustace admitted to several fraudulent acts and eventually entered into a consent decree. On May 8, 2006, the Receiver initiated the present suit and filed a complaint asserting several claims against Man Financial, Inc. ("Man"), PAAMCo's Futures Commission Merchant. On July 6, 2007, the RAL amended the complaint to include

UBS as a direct Defendant.[2]  The RAL asserts one claim of Negligence and one claim of Breach of Contract against UBS, alleging that UBS participated in and permitted Eustace's fraud.

## II. Summary of the Arguments

UBS now moves to wind up, or in the alternative, to vacate, the Receivership.  In support of its motion, UBS makes several arguments that the court has already rejected in previous rulings in this case.  UBS first argues that the RAL can not stand in the shoes of the Offshore Fund because the Offshore Fund is not an "affiliate" of PAAMCo, nor controlled by PAAMCo. In its Reply, UBS devotes a great deal of space to this topic, arguing that the Trading Advisory Agreement (between PAAMCo and the Offshore Fund) negates Eustace's control over the Offshore Fund and that the CFTC did not have the authority to seek appointment of the Receiver for the Offshore Fund.  UBS continues by contending that the CEA permits the appointment of a Receiver only over parties that are "wrongdoers", and since no one alleges the Offshore Fund did anything wrong, the RAL can not stand in its shoes.

The RAL and CFTC respond that the receivership indeed covers the Offshore Fund and any interpretation to the contrary would be absurd.  The RAL points out that had the Receiver been appointed over PAAMCo alone, there would be no funds to freeze and no claims to assert to recover damages.  The RAL and the CFTC assert that PAAMCo and the Offshore Fund are clearly related entities, and that Eustace was in *de facto* control of the Offshore Fund.  The RAL and the CFTC state that the CFTC intended to and had the authority to seek a receiver for the Offshore Fund and that the applicable law does not mandate that receivers be appointed only over entities that are alleged to be "wrongdoers."

---

[2] Man had previously filed a complaint against UBS as a third-party defendant.

UBS also argues the Receivership should be vacated or wound up because the Offshore Fund was not a party to the Consent Order.  The CFTC responds that UBS does not have standing to raise this argument.  The RAL responds that the Directors of the Offshore Fund as well as UBS had the opportunity to participate in the process leading to the Consent Order and failed to do so.  According to the RAL, UBS only questions the Receivership now that the RAL has brought claims against it.

UBS further asserts that the Court did not consider a series of "relevant factors" as to the Receiver's appointment over the Offshore Fund.  According to UBS, proper consideration of these factors would illustrate that the appointment of the Receiver is invalid.  For example, UBS contends that proper consideration of the fact that Eustace is enjoined from trading indicates that there is no imminent danger to the Offshore Fund and thus no need for a Receiver.  Similarly, UBS contends that since the Offshore Fund stopped trading in June 2005, the fund poses no risk of continued harm and thus does not need a Receiver over it.  In its opposition, the RAL essentially states that the Receivership is still needed to continue the pending litigation against U.S. based defendants, to administer the assets collected to date, and to handle the issues arising in Eustace's bankruptcy case.  The CFTC argues that the Court has broad discretion to fashion appropriate relief pursuant to the Commodities Exchange Act ("CEA") and agrees with the RAL that the receivership is still needed.

Finally, UBS argues that the Receivership should be wound up because between the Joint Liquidators, the Offshore Fund's directors, and the Offshore Fund's investors, there are enough entities acting on behalf of the Offshore Fund such that the Receiver is no longer needed.  The RAL responds that the Receivership should continue since a protocol agreement is in place to

govern the relationship between the Receiver and the Joint Liquidators, and issues of comity and efficiency weigh in favor of this Court retaining jurisdiction. The RAL submits an affidavit in which one of the individuals appointed as a Joint Liquidator states that it is in the best interests of the Offshore Fund's investors if the RAL continues his role in this Court in connection with the pending litigation. The CFTC agrees that the Offshore Fund's investors would suffer if the Receivership did not continue. The CFTC states that the Joint Liquidator's opinion that the Receivership should continue are unarguably more persuasive than UBS's contention that the Receivership should cease.

**III.    Discussion**

Courts have broad discretion in supervising an equity receivership. SEC v. Black, 163 F.3d. 188, 199 (3d Cir. 1998) ("where there is a receiver with equitable power in a proceeding before it, the District Court has wide discretion as to how to proceed"); Maxwell v. Enterprise Wall Paper Mfg. Co., 131 F.2d 400, 403 (3d Cir. 1942) ("[w]e start with the undisputed premise that the granting or refusal of the appointment of a receiver is, in the first instance, a matter of discretion for the lower court"); FDIC v. Bernstein, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) ("one common thread keeps emerging out of the cases involving equity receiverships – that is, a district court has extremely broad discretion in supervising an equity receivership").

Although the appointment of a receiver is an extraordinary remedy, it was justified in these circumstances, because fraud was obvious and there was an immediate need to protect assets. Tanzer v. Huffines, 408 F.2d 42, 43 (3d Cir. 1969) ("[a] receiver may be appointed to avert further loss of assets through waste and mismanagement"); CFTC v. Comvest Trading Corp., 481 F. Supp. 438, 400 (D. Mass. 1979) (setting forth several factors that courts weigh in

exercising their discretion over the appointment of a receiver).

The UBS motion will be denied as without basis in law or fact, and also because UBS persists in making arguments that have previously been rejected in prior opinions of this Court.

In the first place, the Court finds that UBS has no standing to make this motion in this civil action, which is a damages action brought by the RAL against Man and UBS to recover sums on behalf of the Offshore Fund and its investors. By filing this motion in this case, UBS has forced the CFTC and the RAL to expend their resources in opposing the UBS motion, which was inappropriately and improperly filed in this case.

If UBS wished to seriously present its position, UBS should have moved to intervene in the action brought by the CFTC, C.A. No. 05-2973, because that is the action in which the Receiver and the RAL were appointed. The Court is of the opinion that if UBS had made such a motion to intervene in that case, the Court would have summarily denied it without requiring the detailed and diversionary briefing which UBS has required of the RAL and the CFTC, by filing its motion in this case.

Secondly, UBS continues to advocate a position which the Court has previously rejected, specifically, that the Court's appointment of a Receiver for PAAMCo does not allow the Receiver or RAL to look after the interests of the Offshore Fund and its investors. UBS ignores a previous conclusion by this Court, <u>see</u> Memorandum of October 5, 2006 (Doc. No. 92), that for purposes of allowing the Receivership to proceed in accordance with Judge Padova's original Order, the Court will respect the RAL's contention that the Offshore Fund is an affiliate of PAAMCo, and thus within the Receivership Order, and also that the Offshore Fund was controlled by Eustace, the admitted wrongdoer and mastermind of this scheme. UBS insists on

re-quoting and rearguing positions that were previously rejected, including the patently absurd argument that because certain formal documents make distinctions between PAAMCo and the Offshore Fund, this Court and the RAL should ignore the realities of the fraud in favor of the formalities of legal documents.

Next, UBS could have and should have made these arguments when the Court entered an Order continuing the Receiver's duties to act on behalf of PAAMCo and the Offshore Fund.  See Order dated September 19, 2005 (C.A. No. 05-2973, Doc. No. 37).  Although UBS was not a party in this case at this time, it had received a subpoena for its documents and was notified of the Receiver's motion leading to the Order of September 19, 2005.  That Order was posted on the Receiver's website.  Furthermore, when UBS was named as a third party Defendant on January 22, 2007, (Doc. No. 157), UBS did nothing to protest the authority and conduct of the Receiver.  Indeed, it was not until UBS was named as a direct Defendant in this case that UBS elected to file this motion, and then did so improperly in this case.  UBS's conduct is questionable.

In addition, although UBS cites a number of cases in support of its motion, none of them support its position.  For example, SEC v. Black, supra, endorses the broad discretion which a district judge has in appointing and supervising a receiver and lends no support to the UBS motion that this Receivership should be vacated or wound up.  In SEC v. Black, the Third Circuit affirmed the District Court's lifting of a freeze on certain assets.  The District Court had determined that the fraudulent actor never had control over some of the assets that were frozen and thus lifted the freeze on those assets.  SEC v. Black, 163 F.3d at 196.  In the case at bar, there is ample evidence to support Eustace's control over the Offshore Fund, and, as noted above, this Court has already determined that it will respect the RAL's contention that Eustace controlled the

Offshore Fund, pending any jury decision at trial.

UBS cites CFTC v. Incomco, Inc., 580 F. Supp. 1486 (S.D.N.Y. 1984) to support its assertion that a receiver can only represent wrongdoers.  However, Incomco does not support this assertion.  Incomco does not even address receiverships.  Incomco held that in order for the court to grant CFTC's request for a permanent injunction against two individuals, CFTC had to prove a likelihood of continued wrongdoing by those individuals.

UBS persists in arguing that because the Offshore Fund did not commit any fraud, this Court has no right or power to impose a receivership over it or its assets.  This argument again completely ignores the contentions of the RAL, which this Court has held are appropriate and supported by substantial evidence (but may be submitted to a jury for determination at trial) that Eustace and PAAMCo controlled the Offshore Fund, that the Offshore Fund held substantial assets which were subject to fraudulent manipulation by Eustace, and that without control by the Receiver and the RAL over the Offshore Fund, a mere receivership as to PAAMCo would be an empty and futile act.  Furthermore, the Receiver and RAL act not for the benefit of the Offshore Fund as an abstract entity, but rather for the ultimate benefit of the investors in the Offshore Fund, who, along with the Offshore Fund itself, are obviously injured parties in this case, if wrongdoing by any defendant is established.

In conclusion, UBS has not only filed its motion in the wrong case, it ignores prior rulings, it ignores the contentions of the parties, it ignores the facts, and it has no legal support.[3]

---

[3]The Court must also note prior questionable litigation practices by UBS and/or its counsel.  At a hearing on the UBS Motion to Dismiss for Lack of Personal Jurisdiction, the Court noted that the UBS brief misrepresented the evidence of record.  See transcript of hearing, April 18, 2007, pp. 11-19.  In noticing a deposition of Thomas Gilmartin, for New York City, when all prior depositions of Mr. Gilmartin had taken place in Philadelphia, and in stating in the notice

An appropriate Order follows.

---

that it would "continue from day to day," when the Court had put specific time restrictions on any further deposition of Mr. Gilmartin, UBS inappropriately required Gilmartin's counsel to file a motion for protective order, and the Court was critical of UBS's counsel's conduct in a conference call on July 27, 2007.  One of UBS's arguments in support of its Motion to Dismiss the Complaint was found to "border on frivolous" by ignoring prior holdings of the Court.  <u>See</u> Doc. No. 383.  UBS must be aware of the provisions of 28 U.S.C. § 1927, which allows the Court to impose costs, expenses, and attorneys fees on an attorney for improper litigation tactics.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM, et al. | : | CIVIL ACTION |
| v. | : | |
| MAN FINANCIAL INC., et al. | : | NO. 06-1944 |

## **ORDER**

AND NOW, for the reasons stated in the foregoing Memorandum, it is hereby

ORDERED that UBS's Motion to Vacate/Wind Up the Receivership (Doc. No. 342) is DENIED.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

A:\Harmelin v. Man 06-1944 - UBS Motion Wind Up.wpd