IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM FOR PHILADELPHIA ALTERNATIVE ASSET MANAGEMENT COMPANY, LLC, AND ITS PARTNERS, AFFILIATES, SUBSIDIARIES AND RELATED ENTITIES, et al. | : : : : : : : | CIVIL ACTION |
| v. | : : | |
| MAN FINANCIAL INC., THOMAS GILMARTIN, AND UBS FUND SERVICES (CAYMAN) LTD. | : : : : | NO. 06-1944 |
| v. | : : | |
| JOHN WALLACE, EDWARD GOBORA, DAVID LASHBROOK and SCOTT SOMERVILLE, Third Party Defendants | : : : : | |

**MEMORANDUM NO. 2 RE: SUMMARY JUDGMENT MOTIONS**

**Baylson, J.**                                                                                                    **October 2, 2007**

Memorandum No. 1, filed September 12, 2007 (Doc. No. 382), set forth the background of this case, and denied certain grounds for the pending Motions for Summary Judgment by Defendants Man Financial, Inc. ("Man") and Thomas Gilmartin ("Gilmartin").

**I.     RICO Claims**

Now under consideration are the Plaintiff's claims under the Racketeer Influenced and Corrupt Organization Statute, 81 U.S.C. § 1962(c) ("RICO"), which were discussed in the Memorandum dated October 5, 2006, denying Man's Motion to Dismiss the Complaint. Plaintiff, the Receiver ad litem ("RAL"), alleges the RICO enterprise as an association consisting of Man, Paul M. Eustace, ("Eustace"), and Gilmartin, working under Philadelphia Alternative

-1-

Asset Management Company, LLC ("PAAMCo"). Plaintiff asserts that the racketeering predicate acts are wire fraud and that there is evidence of record to show sufficient incidents to constitute an enterprise, a pattern, the requisite element of continuity, plus the proximate cause of damages. Defendants correctly state that RICO should not be used to turn a "garden variety" fraud case into a RICO case allowing treble damages. However, the Supreme Court has often stated that if Plaintiff has evidence of the RICO elements, summary judgment is improper.

### A.    Enterprise

To satisfy the enterprise requirement, Plaintiff asserts that the alleged association is sufficient, but Defendants contend that the differing purposes and differing allegiances of the members of the alleged enterprise prevent it from being characterized as an enterprise under RICO. Although the parties have cited a number of older Third Circuit cases on the RICO enterprise concept, the Court concludes that in Cedrick Kushner Promotions Ltd. v. King, 533 U.S. 158 (2001) the Supreme Court adopted a more liberal standard for the sufficiency of an enterprise under RICO. Under the standard set forth in Kushner, a finding of an enterprise under RICO only requires some formal distinction from the defendants in the case.

Of the designated members of the enterprise, PAAMCo and Eustace are not defendants in this case, although Eustace is certainly an admitted wrongdoer. Although the Kushner opinion notes that in order to establish liability under § 1962(c), a party must prove that a "person," (a defendant) separate and distinct from the alleged enterprise, improperly conducted the affairs of the enterprise, satisfying the test for distinctiveness is not difficult. The alleged enterprise is not insufficient as a matter of law.

B.  **Racketeering Conduct**

Defendants next argue there is insufficient evidence that any of the Defendants acted with the requisite reckless knowledge and willfulness, and therefore there cannot be any finding that they engaged in racketeering activity. Although Plaintiff bases his argument in part on an assertion that Defendants can be liable under a theory of "willful blindness," Defendants assert that the case law allowing such a theory to prevail requires "subjective knowledge" of wrongdoing, which is absent in this case. Defendants also rely heavily on two Third Circuit cases, United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978) and United States v. Dobson, 419 F.3d 231 (3d Cir. 2005), which both reverse convictions for mail fraud because the jury instructions did not adequately explain the government's burden to prove defendant not only willfully participated in, but also had knowledge of, the underlying scheme. Defendants contend these cases warrant summary judgment because of undisputed evidence showing that Gilmartin did not take any steps to hide the existence of the 50 account, and in fact disclosed its existence, and that Man disclosed the existence of the 50 account to the National Futures Association as of June 1, 2005. According to Defendants, these facts negate the requisite specific intent. As detailed in Memorandum No. 1, although substantial evidence supports Defendants' contentions, substantial evidence also supports Plaintiff's position.[1]

The Court is unwilling to grant summary judgment in reliance on Pearlstein and Dobson because these cases establish the standard for the jury charge and sufficiency of evidence as to the knowledge required for conviction under the mail fraud statute. Pearlstein and Dobson do

---

[1] The record discloses evidence that a jury may conclude constitutes wire fraud, in addition to the disputed facts mentioned in Memorandum No. 1. See facts cited in Plaintiff's Memorandum of Law, Doc. No. 335, pages 31-82.

not state a standard for assessing motions for summary judgment in civil cases. There is substantial evidence, reviewed in Memorandum No. 1, to allow a jury to find that Man and Gilmartin had sufficient knowledge, from overall circumstances, to satisfy the Plaintiff's burden of proof under the Commodity Exchange Act ("CEA"), itself a statute requiring proof of fraud. The Court must therefore reject Defendants' argument. Some of the same acts and omissions that were found sufficient under the CEA provide evidence that Defendants acted with the requisite knowledge and willfulness required under RICO.

In support of their position that Man and Gilmartin did not engage in racketeering activity, Defendants cite United States v. Brodie, 403 F.3d 123 (3d Cir. 2005), which held that the district judge had erroneously entered a judgment of acquittal after a jury found defendant guilty of violating the Trading With the Enemy Act and certain other federal regulations. Thus, Brodie is not a summary judgment decision nor is it a RICO decision. In the course of its opinion, the court held that a reasonable jury could find the defendant "actually knew of, or was willfully blind to, the involvement of the U.S. entity in the transactions. . . ." 403 F.3d at 149. In a subsequent discussion of the "willful blindness" theory of criminal liability, the court said, "we also conclude that a reasonable jury could find the knowledge requirements of the criminal theory of willful blindness. Overall, the government's evidence paints a convincing picture of the defendant as a company president who deliberately stuck his head in the sand regarding the involvement of the U.S. entity in the prohibited transactions. . . ." Without necessarily concluding that "a willful blindness" jury charge would be appropriate in this case, Brodie may support the Plaintiff's theory of the case as much as the Defendants'.

Defendants also cite U.S. v. Flores, 454 F.3d 149 (3d. Cir. 2006), which was also a

criminal prosecution where the court affirmed a conviction for conspiracy to commit money laundering and conspiracy to structure monetary transactions. Defendants state in their Reply brief, pages 28-29, "in each of these cases [Brodie and Flores], the evidence showed, as it must, that each defendant 'was subjectively aware of the high probability of the fact in question, and not merely that a reasonable man would have been aware of that probability,'" citing United States v. Stewart, 185 F.3d 112 (3d Cir. 1999). The Court will not accept this "leap" to Brodie and Flores from the quotation from Stewart. The decision in Flores flatly rejects a requirement of such proof of "subjective" awareness: "[t]he government establishes willful blindness by proving that a defendant 'was objectively aware of the high probability of the fact in question.'" Flores, 454 F.3d at 155, citing Brodie, 403 F.3d at 148 (emphasis added).[2]

After reviewing the evidence, the court in Flores stated "thus, the jury could have inferred that Flores was motivated to avoid learning the truth because the money laundering operation was profitable to him." 454 F.3d at 156. Since there is some evidence that Man employees noted the large fees Man received from the Offshore Fund trades, see evidence cited in Plaintiff's brief, page 81, and there is some evidence that Man employees allowed Eustace to engage in suspicious activities, it is quite possible that a jury would infer that Man intentionally avoided learning the truth of Eustace's fraud.

Defendants are correct that in the trial judge's charge to the jury in Flores, the judge said:

> So with respect to the issue of the defendant's knowledge, if you
> find, beyond a reasonable doubt, from all the evidence in the case,
> that the defendant was subjectively aware of a high probability of
> the existence of a fact and deliberately tried to avoid learning

---

[2]Stewart, 185 F.3d at 127, also rejects any requirement to charge the jury on "subjective awareness."

> whether the fact was true, you may find that the government has
> satisfied its burden of proving the element of knowledge of that
> fact.

454 F.3d at 159 (emphasis added). However, contrary to the suggestion in the Defendants' brief, in neither Brodie nor Flores did the Third Circuit specifically require this language.

Leaving aside the question of what would be a proper charge to the jury, the Court rejects Defendants' argument that for purposes of deciding summary judgment, the Court must find that Plaintiffs have shown that the members of the enterprise were "subjectively aware" of the fraud being committed by Eustace. Defendants' citations do not show this is the standard for a criminal case, and there is no showing that such a standard would apply to the requisite knowledge required in a civil RICO case.[3]

### 3. Pattern of Racketeering Activity

Defendants also assert that Plaintiff has failed to show a genuine issue of fact for trial on the requirement of a "pattern of racketeering activity." In general, the requisite pattern must be demonstrated by showing various predicate acts that are both "related" and "continuous." See H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) and Klehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1411-12 (3d Cir. 1991).

Plaintiff alleges some 57 predicate acts. For purposes of deciding this Motion only, the Court will agree with Defendants that two of the acts, which took place in June 2004, are so far

---

[3] The model criminal jury instructions suggested for the Third Circuit, which have not yet been published in print but are available to the public on the Third Circuit's website, § 5.06, contain a suggested charge for willful blindness, which does not include the "subjectively aware" language advocated by the Defendants. The Reporters' Notes disclose a number of Third Circuit decisions inconsistently using the word "subjective" in connection with "willful blindness." The undersigned is a member of the committee that has prepared these model jury instructions.

removed in time and nature from the other acts, that they will not be considered racketeering acts. Defendants assert that the other alleged predicate acts, which allegedly took place from April 10, 2005 through June 23, 2005, are too short in duration to satisfy the requisite continuity element.

To support his contention that the facts gathered during discovery are sufficient to prove a pattern of racketeering activity, Plaintiff cites, at pages 122-24 of his brief, a number of events relating to the relationship between Eustace and Gilmartin, to Gilmartin's ownership in PAAMCo, and to certain acts and omissions by Gilmartin, and other Man Financial employees. The events allegedly occurred over a period of time, culminating in the huge losses in the Offshore Fund.

In their reply brief, Defendants assert that many of these activities are belied by other actions. For example, Defendants claim that when Gilmartin told other individuals, including the Offshore Fund directors Lashbrook and Somerville, and PAAMCo employees Wallace and Gobora, about the 50 Account, he clearly negated any intent to conceal any conduct that could constitute racketeering activity. Memorandum No. 1 summarized these disputed facts in the record.

Man and Gilmartin argue that the facts in the record support their description of relevant events. They contend that as a result, this Court should not entertain Plaintiff's description of relevant events, and they rely on the recent case of Scott v. Harris, 127 S. Ct. 1769 (2007) to support this contention, because the Court found that an unambiguous videotape negated the requisite elements of plaintiff's claim, and thus directed summary judgment for the defendant. The Court reasoned that the videotape corroborated the defendant's position, and that such incontrovertible corroboration overrode the plaintiff's description of the events. Scott v. Harris

also held that although inferences must be drawn in favor of non-moving party, those inferences must be "reasonable." In the case now under consideration, there is no single piece of irrefutable evidence, and Scott v. Harris is thus not on point.

As to the continuity requirement, the leading Third Circuit case is Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995) which discusses the differences between closed and open-ended continuity. The Third Circuit has held that one year of activity is not sufficient for a closed-ended scheme. Hughes v. Consol-Pa. Coal Co., 945 F.2d 594 (3d Cir. 1991). However, the Court would characterize the scheme in this case as open-ended because it threatened to continue into the future, as there is evidence that it would have, if it had not been discovered and stopped by the Commodity Futures Trading Commission ("CFTC").

The RAL cites cases, see e.g., Emcore v. Price Waterhouse Coopers. LLP, 102 F. Supp. 2d 237 (D.N.J. 2000), which hold that open-ended continuity is established for a short-lived scheme when discovery of the scheme, such as the CFTC filing of its action on June 22, 2005, terminates the scheme on an involuntary basis. The Court is satisfied that the alleged scheme at issue would qualify as open-ended.

As to whether the pattern requirement existed for a sufficiently lengthy period of time, Defendants point out that the cases relied upon by the Plaintiff in pages 127-30 of his brief are not from this district or the Third Circuit. The Court accepts this, but is unwilling to grant summary judgment merely because the Third Circuit has not specifically addressed this issue. There is nothing in the record to show that if the fraud had not been discovered and terminated by the CFTC's injunction action, that it would have stopped voluntarily. To grant summary judgment on this ground, when the Third Circuit and the Supreme Court have not yet ruled on

Defendants' legal position, would be improper. It is quite possible that Plaintiff's RICO claim will not survive a directed verdict at trial or be accepted by the jury. If there is a liability verdict in favor of Plaintiffs on the RICO claim, Defendants' legal position will have been preserved, and can be better adjudicated on a full trial record than on the summary judgment papers alone. For this reason, Defendants' argument on the "pattern" requisite of RICO will be rejected.[4]

For the reasons stated above, the Court will deny summary judgment to Defendants on the RICO claim.

## II.  Plaintiff's Claims for Common Law Fraud, Negligence and Negligent Supervision

Plaintiff has asserted that Defendants Man and Gilmartin are liable under common law claims for fraud, negligence and negligent supervision. The Court need not dwell long on Defendants' Motion for Summary Judgment as to these claims. The findings in Memorandum No. 1, concerning the Commodity Exchange Act claim, require denial of summary judgment on the common law fraud claim. Negligence and negligent supervision are based on many of the same facts as the CEA claim, but require a lower standard of proof than fraud. Findings that Plaintiff's evidence warrants a trial on the fraud claims necessitates finding that the Plaintiff may be able to prove negligence and negligent supervision. Although Man asserts that these two

---

[4] Defendants also urge this Court to adopt a requirement of reliance, and rely heavily on Bank of China v. NBM, 359 F.3d 171 (2d Cir. 2004). The Court is unwilling to make this a formal requisite in a RICO case, over and above proximate cause, without a Third Circuit precedent. However, it would not take much proof for Plaintiff to show that the investors in the Offshore Fund, who are the ultimate beneficiaries of any recovery in this case, relied on the professionals who claimed expertise in these areas to report the facts accurately and conduct their businesses honestly. There is ample evidence in the record that this standard was not adhered to, and if the investors had knowledge of the wrongdoing that has since been revealed, they would have taken prompt action as did the CFTC. The Court specifically finds that there is substantial evidence in the record to show reliance, as a broad legal concept, has been demonstrated to exist.

claims are overlapping and duplicitous, the Court need not and does not decide that issue at this point, and will deny summary judgment as to both claims. However, the Court advises the parties that at the trial, it is likely that these two claims will be presented to the jury as a single claim for negligence, if only to streamline the trial, ease the jury's burden, and prevent duplicative damages.

In the Memorandum of September 18, 2006, the Court noted that Man's duties are defined by the Customer Agreement in this case. Although the Customer Agreement focuses on Man's duties to its customers, the Court did not mean to imply that no other evidence will be admitted, or that Plaintiff cannot show what happened on a day-to-day and week-to-week basis, in attempting to prove the negligence claim. Whether the Court will charge the jury on a breach of fiduciary duty theory remains to be seen.

It must be noted that the Customer Agreement obliges Man to obey not only "all applicable law," but also "the rules and regulations of all federal, state and self-regulatory agencies including, but not limited to, . . . the constitution rules and customs of the exchange or market and clearing house where executed." Customer Agreement, paragraph 2. Thus, Plaintiff will be able to rely on evidence he contends shows that Man breached these standards, including the standard of care which applies generally to the rendering of professional services, and will not be limited to the four corners of the Customer Agreement. There may also be evidence at trial as to custom and usage, which may be of great help to the jury in understanding the role of a future commission merchant and the respective responsibilities of it and its customers.

As to the claim of negligent supervision, the cases which discuss this tort basically employ a theory of respondeat superior. Man has generally recognized its responsibilities for the

acts and omissions of its employees, and the Court does not see any utility in a lengthy discussion of this issue.

### III. Deepening Insolvency

Plaintiff also asserts against Defendants a claim of deepening insolvency, which the Third Circuit has found to be a valid cause of action under Pennsylvania common law. See Official Committee of Unsecured Creditors v. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001).[5] However, Illinois law, which the parties agree is applicable as the choice of law under the Man Customer Agreement, has not explicitly recognized this theory.

The Court has decided to grant Defendants' Motion for Summary Judgment on this ground for several reasons. First, the Illinois legislature has not recognized Deepening Insolvency as a claim and it is unclear whether Illinois state courts have done so.[6] Secondly, those cases which have recognized the claim addressed corporations that were already insolvent. In this case, there is really no business corporation with assets and liabilities and annual profits or losses, but only a hedge fund which traded commodity futures. The doctrine of deepening insolvency is of doubtful applicability in such a situation and Plaintiff has not shown to the contrary. Introduction of evidence on "deepening insolvency" would be inconsistent with the

---

[5] A subsequent Third Circuit case somewhat narrowed the applicability of Lafferty. See In Re CitX Corp., Inc., 448 F.3d 672 (3d Cir. 2006).

[6] See Holland v. Arthur Andersen & Co., 212 Ill.App.3d 645, 652 (1st Dist. 1991) (stating that the "deepening insolvency theory may be one the courts have recognized" but rejecting the plaintiff's deepening insolvency claim as duplicative of plaintiff's other claims) (citing Schacht v. Brown (7th Cir. 1983), 711 F.2d 1343, cert. denied (1983), 464 U.S. 1002 (refusing to conclude that Illinois courts would not adopt deepening insolvency as a theory)). See also In re Parmalat Secs. Litig., 377 F. Supp. 2d, 390, 418 (S.D.N.Y. 2005) ("Whether Illinois law recognizes a distinct cause of action for deepening insolvency is an open question").

other claims against the Defendants, based on fraud or negligence, with the resulting loss of substantial sums to the investors. The claim of deepening insolvency would require extensive proof of balance sheets and accounting terms – all of which would not only be confusing, but also inconsistent with the proof of fraud and the concept of proximate cause, in the context of investor losses, if the jury finds that fraud has been shown.

### IV.     Breach of Contract

The parties have filed cross motions on the breach of contract claim, Plaintiff asserting that undisputed evidence shows that Man breached its obligations, and Man contending exactly the opposite. Plaintiff specifically asserts that four specific incidents show a breach of contract:

(1)     A March 1, 2005 trade which violated two different Chicago Board of Trade rules.

(2)     Gilmartin's ownership interest in PAAMCo, which violated NFA Rule 2-3.

(3)     Man's failure to properly supervise its employee Gilmartin, violating 17 C.F.R. § 166.3 and NFA Rule 2-9(a).

(4)     Violation of other exchange rules, statutes and regulations, and Man's own internal guidelines, when Gilmartin permitted Eustace to open the Offshore Fund account at Man. See Plaintiff's brief, in support of summary judgment, pages 30-47.

On the other hand, Man asserts that Plaintiff, by relying on regulatory provisions, etc., is trying to introduce a private right of action in favor of a customer for violation of these regulations. Man also shows the Offshore Fund did not itself fully perform its obligations under the contract. However, Man does not satisfactorily refute the Plaintiff's reliance on the regulations, etc. warranted by § 2 of the Customer Agreement. Man also asserts that any claim based on transactions which took place before May 8, 2005 would be barred by the one-year

limitations period and the Customer Agreement. The Court rejects this argument based on the holding regarding the statute of limitations in Memorandum No. 1.

Although there does not appear to be any dispute between the parties that Man executed the trades as it was instructed to do by Eustace and PAAMCo (which is the basis of Man's motion for summary judgment for breach of contract), disputed facts as to Man's compliance with regulations prevents summary judgment for any party on the breach of contract claim.

### V. In Pari Delicto Issue

Man claims that all of Plaintiff's claims are barred under the doctrine of in pari delicto which prevents plaintiff from recovering damages resulting from their own wrongdoing, and which has been recognized by Illinois law. King v. First Capital Financial Services Corp., 828 N.E. 2d 1155, 1173 (Ill. 2005) (dictum). See, also, Lafferty, 267 F.3d at 354-5 (upholding in pari delicto doctrine as applied to bankruptcy trustee but noting different result often reached in receivership context). Man asserts that the Receiver and Receiver Ad Litem stand in the shoes of Eustace, an admitted wrongdoer, and PAAMCo's agent. Plaintiff asserts that the wrongdoing of an agent (Eustace) cannot be imputed to the principal (the Offshore Fund) because the agent's actions were adverse to the principal's interests. Man asserts that because Eustace was the sole actor for PAAMCo, and PAAMCo was the sole actor for the Offshore Fund, that the in pari delicto doctrine runs through to the RAL and protects Man and Gilmartin from any claim for damages.

Plaintiff responds that the in pari delicto doctrine does not apply to the Receiver as a court-appointed equity receiver, representing innocent shareholders and creditors, and that Man's argument is precluded by the adverse interest exception. Man contends the exception does not

apply because the principal benefitted, and empowered Eustace to perform unsupervised, as the "sole actor."

Man relies heavily for its position, on Knauer v. Jonathan Roberts Fin. Group, 348 F.3d 230 (7th Cir. 2003), but this case is distinguishable on its facts and also applies Indiana law.

Plaintiff relies heavily on Scholes v. Lehman, 56 F.3d 750 (7th Cir. 1995), applying Illinois law, which refuses to apply in pari delicto when the plaintiff is no longer a wrongdoer, pointing out that the doctrine has most applicability when there are competing wrongdoers, but does not have applicability where one of the plaintiffs, as a court-appointed equity receiver is, as in the case before us, suing to protect innocent and injured parties. See also, Bateman Eichler v. Berner, 472 U.S. 299, 306 (1985) (setting forth broad policy reasons for refusing to apply in pari delicto in securities fraud case).

Man's argument on in pari delicto, that the blatant fraud by Eustace must be applied against the Receiver to bar any recovery by the Receiver on behalf of the Offshore Fund and its investors, is rejected based on the above cases, because current law does not support Man's position. The Court will deny Man's Motion for Summary Judgment on this ground.

**VI.**   **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff seeks to turn the tables by moving for summary judgment, asking the Court to rule that the alleged negligence of PAAMCo, UBS and the Offshore Fund and their employees cannot be imputed to Plaintiff. The Court will also deny Plaintiff's motion for partial summary judgment on the negligence imputation ground. Whether acts that a jury might find are negligent can be imputed to the Plaintiff is a trickier question that must be left for trial. As the Court has previously held, the governing agreement in this case is the Customer Agreement between Man

and the Offshore Fund. If the evidence shows certain operational acts or omissions, and they only concern the day-to-day operation of the Offshore Fund, they may possibly be imputed to the Plaintiff even though one party asserts that the conduct was negligent. For this reason, the Court will deny Plaintiff's motion for partial summary judgment on this ground.

The Court has reviewed the other assertions of Man and Gilmartin for summary judgment and finds that Defendants are not entitled to summary judgment on any claim other than deepening insolvency.

An appropriate Order follows.

O:\CIVIL\06-1944 Hodgson v. Gilmartin\Harmelin v. Man 06-1944 - Memo no. 2 Summary judgment.wpd

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM FOR PHILADELPHIA ALTERNATIVE ASSET MANAGEMENT COMPANY, LLC, AND ITS PARTNERS, AFFILIATES, SUBSIDIARIES AND RELATED ENTITIES, et al. | : : : : : : | CIVIL ACTION |
| v. | : : | |
| MAN FINANCIAL INC., THOMAS GILMARTIN, AND UBS FUND SERVICES (CAYMAN) LTD. | : : : : | NO. 06-1944 |
| v. | : : | |
| JOHN WALLACE, EDWARD GOBORA, DAVID LASHBROOK and SCOTT SOMERVILLE, Third Party Defendants | : : : | |

## ORDER

AND NOW, this 2nd day of October, 2007, for the reasons stated in Memorandum No. 1 and the foregoing Memorandum No. 2, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 274) is GRANTED as to Plaintiff's claim for deepening insolvency only, and is otherwise DENIED.  Plaintiff's Motion for Partial Summary Judgment (Doc. No. 270) is DENIED.

BY THE COURT:

s/Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.