**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM | : | CIVIL ACTION |
| FOR PHILADELPHIA ALTERNATIVE ASSET | : | |
| MANAGEMENT COMPANY, LLC, AND ITS | : | |
| PARTNERS, AFFILIATES, SUBSIDIARIES AND | : | |
| RELATED ENTITIES, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| MAN FINANCIAL INC., THOMAS GILMARTIN, AND | : | NO. 06-1944 |
| UBS FUND SERVICES (CAYMAN) LTD. | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN WALLACE, EDWARD GOBORA, DAVID | : | |
| LASHBROOK and SCOTT SOMERVILLE, | : | |
| Third Party Defendants | : | |

**MEMORANDUM NO. 3 RE: MOTIONS FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                **October 2, 2007**

Third party Defendants David Lashbrook ("Lashbrook") and Scott Somerville

("Somerville") have also moved for summary judgment and assert three general grounds:

1.      They renew their position that they are not subject to personal jurisdiction in this

Court.  See Memorandum dated December 22, 2006, Doc. No. 141.

2.      Man Financial Inc.'s ("Man") claim for indemnification is unfounded under law.

3.      Man's claim for contribution is inapposite because there is no evidence that they

could be joint tortfeasors with Man, and there could not be any other basis for contribution.

**I.      Fact Issues as to Liability**

The formal role of Lashbrook and Somerville in this case is not in dispute; however,

many of the details are in dispute.  They were designated pursuant to an agreement between them

and Maples Finance, Ltd. ("Maples") to serve as directors of the Offshore Fund.  Their duties and

responsibilities were similar to the directors of a company in the United States.  The agreement

designating them stated that it was subject to Cayman Islands law and also vested exclusive

jurisdiction in Cayman Islands courts to resolve any disputes.[1]

Generally, Lashbrook and Somerville show from evidence in the case that they acted

appropriately as directors of the Offshore Fund.  On the issue of knowledge of the hidden 50

Account, their denial of knowledge of its establishment and operation does not appear to be in

dispute.  As far as the issue of Man's monthly statements being mailed to them, but being

forwarded unopened to Philadelphia Alternative Asset Management Company, LLC

("PAAMCo"), Lashbrook and Somerville testified that the mail was not forwarded to them

personally, but rather to M&C Corp. Services, Ltd., the Offshore Funds' registered agent, and it

was customary for such envelopes to be forwarded to the fund administrator.  Their position, that

it was understood that a brokerage company, such as Man, would provide electronic information,

appears to be also generally accepted as of the events in question, and they did not know that

Paul M. Eustace ("Eustace"), the mastermind of the wrongdoing, had not authorized Man to send

electronic statements of the 50 Account to UBS Fund Services (Cayman) Ltd. ("UBS").

On the issue of the confusion and lack of knowledge which resulted from the fact that

UBS did not receive electronic statements of the 50 Account, the Court finds at least three

possible conclusions that a jury could reach from the factual scenario set forth in the summary

---

[1]Lashbrook and Somerville cite this provision as precluding this Court's jurisdiction.
However, the Court interprets that agreement as only binding between the signatories, i.e.,
Lashbrook, Somerville and Maples, and not binding on Man.  Lashbrook and Somerville do not
cite any authority as to why this agreement would be binding on Man.  See Agreement for the
provision of directors, Exhibit 19, to Lashbrook and Somerville's Motion for Summary
Judgment.

judgment papers:

1.      Eustace was entirely responsible for the situation since he had purposely declined to give UBS electronic access to Man's electronic statements for the 50 Account.

2.      Man had reason to know that UBS was not getting the electronic statements of the 50 Account and should have made some inquiries about this since it appeared customary that all of Man's customers were getting all of their information electronically, and the fact that UBS was not getting this information electronically as to the 50 Account should have been uncovered and dealt with by Man.[2]

3.      Given the importance of UBS's role in calculating the net asset value, Lashbrook and Somerville should have checked to see that UBS was getting all relevant information, and if they had done so, they would have discovered that UBS was not.

Man's brief, at page 8, asserts the following acts and omissions by Lashbrook and Somerville, from which Man asserts a jury could conclude that they were negligent in the performance of their duties:

1.      Allowing Eustace to open trading accounts at Man when he was not authorized to do so.

2.      Failing to perform due diligence on Eustace.

3.      Failing to understand the Offshore Fund's trading strategies.

4.      Failing to assure the UBS received the information it needed to calculate the

---

[2]In 1998, Man adopted Compliance Bulletin No. 98-1 that required all customers to receive their account statements via electronic media, Man/Rec 6009.  UBS also intended to receive electronic access to all funds handled by it, Burkholder dep. pp. 46-47.  An important fact issue is whether any party bears responsibility for Eustace being able to avoid these requirements as to the 50 Account.

NAV, specifically as to the 50 Account.

     5.      Failing to act on numerous account reconciliations.

     6.      Failing to investigate their representations before signing off on the fund's audit.

     7.      Failing to supervise PAAMCo, as the agent of the Offshore Fund.

Man cites evidence from which a jury can conclude these contentions are true.  See Man's response to fact statements, paragraphs 46-61.[3]  Although Lashbrook and Somerville have a response to each of these allegations, and are able to document some actions which they took which refute Man's allegations, the Court finds that given the totality of circumstances, there are disputed genuine issues of fact in determining whether, as directors of a fund which was so thoroughly defrauded, they were negligent, and the Court cannot grant summary judgment on this ground.

## II.    <u>Jurisdiction</u>

Lashbrook and Somerville's Motion to Dismiss, asserting that this Court did not have personal jurisdiction over them, reviewed a number of the facts that had been established by jurisdictional discovery.  The Motion to Dismiss was denied, but without prejudice, with leave for Lashbrook and Somerville to raise it again on summary judgment, which they have done.[4]

The facts, which have been briefed extensively by both parties, are repetitive to a large extent of the facts discussed in the Court's earlier Memorandum.  One additional relevant fact is that Eustace testified that he was located in Canada during his telephone and e-mail

---

[3]The Court does not rely on any expert opinion cited by any party.

[4]There do not appear to be any material differences in the facts relevant as to both individuals.

-4-

communications with Lashbrook and Somerville.

There are disputes in the briefs as to whether "most" of Eustace's contacts with Lashbrook and Somerville were in Canada or whether the record establishes that "all" of the contacts took place while Eustace was in Canada.  After reviewing the various depositions, the Court finds that Man, which has the burden of proving jurisdiction, has not shown a genuine factual dispute because Eustace consistently testified that his telephone and e-mail communications with Lashbrook and Somerville took place while he was in Canada.  See Exhibit 7, pages 1364-1365.

However, other facts previously relied on in the earlier Memoranda still stand out as uncontroverted and sufficient to allow this Court to have jurisdiction.  First is the fact that invoices for the directors' services for the Offshore Fund were forwarded to PAAMCo in Pennsylvania for payment.  See Exhibit 21.  Furthermore, accepting Lashbrook and Somerville's argument that their communications with Eustace took place when Eustace was not in Pennsylvania, nonetheless, they did have extensive back-and-forth with other PAAMCo employees who were located in King of Prussia, Pennsylvania.  See Man Exhibit 20 and Man's Response to Lashbrook and Somerville's Fact Statements Nos. 21 and 24.

The Court must also credit Man's factual showing that a major investor in the Offshore Fund, the so-called "Feeder Fund," was located in Pennsylvania, refuting Lashbrook and Somerville's assertion that no investors were located in Pennsylvania.

Lashbrook and Somerville reiterate their reliance on the corporate shield doctrine as applied by Judge Scirica in Rittenhouse and Lee v. Dollars and Cents, Inc., 1987 WL 9665 (E.D.Pa. 1987), in which the defendant directors were held not subject to jurisdiction in

Pennsylvania.  Lashbrook and Somerville assert that Rittenhouse establishes, and no case after it

has held to the contrary, that when the facts show that the directors of a company did not make

representations or commit fraud, but only were accused of negligence and breach of fiduciary

duty for failing to act, the corporate shield doctrine has always applied.  See also Moran v.

Metropolitan District Council, 640 F. Supp. 430 (E.D.Pa. 1986).

Lashbrook and Somerville assert that the Third Circuit's recent case, O'Connor v. Sandy

Lane Hotel, 496 F.3d 312 (3d Cir. July 26, 2007), supports their position that specific personal

jurisdiction does not exist because the former directors' contacts with Pennsylvania do not give

rise to or relate to Man's claims.  They claim that the O'Connor standard is not satisfied because

no contact between them and Pennsylvania could constitute injury to the Offshore Fund.

Lashbrook and Somerville further assert that Man's contentions that they "purposely

availed themselves of the law of this forum" is not supported by the evidence because they did

not personally do any business in Pennsylvania.  Lastly, Lashbrook and Somerville persist in

their argument that their visit to counsel in Pennsylvania is not relevant for the jurisdictional

issue, and that contacts by the Offshore Fund itself with PAAMCo are not relevant for personal

jurisdiction.

Except for the last point, the Court does not agree.  The many, although often routine,

communications back and forth between Lashbrook and Somerville and PAAMCo's offices, the

Lashbrook and Somerville visit to Pennsylvania, although occurring after the Commodity Futures

Trading Commission ("CFTC") started its investigation, but prior to their being named as parties

in this case, cannot be ignored.  Lashbrook and Somerville assert that they should not be

penalized jurisdictionally for coming to Philadelphia to see their lawyer about an investigation,

-6-

but at that time, they were coming on official Offshore Fund business and cite no case that such a fact must be ignored.

Man argues that Lashbrook and Somerville should have exercised more control over the affairs of the Offshore Fund, including more diligence as to what PAAMCo was or was not doing, and if they had done so, the fraud may have been discovered. Lashbrook and Somerville assert that all the items that Man claims they should have done but did not do would have been centered in the Cayman Islands, and not in Pennsylvania. Although Man makes claims against Lashbrook and Somerville, just as Plaintiff makes claims against Man, for "acts <u>and</u> omissions" – the jurisdictional inquiry must be founded on what contacts Lashbrook and Somerville actually had with Pennsylvania, not what contacts they would have had if they had done some of the acts that Man suggests they should have done, but did not do.

However, the Court must also consider the "tort-out/harm-in" theory of specific personal jurisdiction that was approved in <u>Pennzoil Products Co. v. Colelli & Assoc.</u>, 149 F.3d 197 (3d Cir. 1998). The jury may find the alleged omissions of Lashbrook and Somerville, summarized above, did cause harm. As noted, a major investor in the Offshore Fund was located in Pennsylvania.

The Court does not agree with the conclusions Lashbrook and Somerville advocate from their reliance on <u>Rittenhouse</u> and <u>O'Connor</u>. Rather than stating bright-line tests, these decisions call for a case-by-case analysis of the facts established in the record. The Court stands by its prior review of <u>Rittenhouse</u> in its Memorandum of December 22, 2006, and <u>O'Connor</u>, in a different factual context, upheld this same type of inquiry.

<u>O'Connor</u> discusses at some length the concept of "relatedness," i.e., whether the contacts

which Lashbrook and Somerville had with Pennsylvania are "related" to the merits of the action. O'Connor and other opinions discuss this as a question of "substantive relevance," and applying that concept to the facts, the totality of circumstances shows that the relatedness requirement has been met. Lashbrook and Somerville were the only directors of the Offshore Fund. They had no employees and they had retained no one else to help discharge their responsibilities as directors. Their contacts with PAAMCo, as the trading advisor for the Offshore Fund, were continual and frequent, and PAAMCo was indisputably located in Pennsylvania, just outside of Philadelphia. The "related" concept does not require Man to show specific evidence that Lashbrook and Somerville knew about the fraud, as that would be close to the test of liability, not the test of personal jurisdiction. Thus, the mailings of bills, the trip to Pennsylvania, and the routine e-mails to PAAMCo must be considered as within the ambit of substantive relevance because all of this conduct was part of their duties as directors, and it is their conduct as directors which is at issue in this case. The Court does not consider communications, and another trip to Pennsylvania, not related to PAAMCo business. Taking all of the facts related to PAAMCo that have been shown, and recognizing the legal standards that apply, the Court finds that Man has established personal jurisdiction, and it would not be unfair, unreasonable or unconstitutional to require Lashbrook and Somerville to defend this case.

## III.   Indemnity and Contribution

The Court agrees that indemnity and contribution are not proper on the RICO and Commodity Exchange Act claims. However, numerous exhibits accompanying the summary judgment papers would allow a jury to find facts that would allow a conclusion that Lashbrook, Somerville and Man were joint tortfeasors. Both Pennsylvania and New York law clearly allow

apportionment of responsibility between and among joint tortfeasors.[5]  The Receiver's

allegations of negligence against Man are broad enough to allow Man to show that Lashbrook

and Somerville may bear responsibility for some of the acts and omissions that Plaintiff contends

constitute negligence, and thus would warrant a joint tortfeasor finding.  Thus, contribution

might be allowed.

      As to claims of indemnification, Man argues vigorously that New York law must apply to

the indemnification claims, largely because it was the site of Man's principal office.   Lashbrook

and Somerville dispute the applicability of New York law and assert that the Court should apply

either Pennsylvania or Cayman Islands law, both of which are consistent on the topic of

indemnification.

      Initially, it is somewhat contradictory for Man to emphasize Lashbrook and Somerville's

contacts with Pennsylvania as providing jurisdiction, but then Man wants to look to New York,

---

     [5]**Pennsylvania**:  Pennsylvania law permits a negligent actor to seek contribution from a
joint tortfeasor.  See Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42
Pa.C.S.A. § 8324.  "The right of Contribution exists only between joint tortfeasors.  Contribution
distributes the loss equally or each joint tortfeasor pay[s] his or her pro rata share."  Lasprogata v.
Qualls, 263 Pa. Super. 174, FN 2 (1979) (holding that a negligent driver causing the initial injury
and a negligent physician aggravating the injury later on through malpractice are not joint
tortfeasors).  Under Pennsylvania law "[t]wo persons are not acting jointly for the purposes of
committing a joint tort if 'the acts of the original wrongdoer [and the joint tortfeasor] are
severable as to time, neither having the opportunity to guard against the other's acts, and each
breaching a different duty owed to the injured plaintiff.'"  Foulke v. Dugan, 212 F.R.D. 265, 270
(E.D. Pa. 2002) (citing Lasprogata v. Qualls, 263 Pa. Super. 174, 179 (1979)).

      **New York**:  New York law permits a negligent actor to seek contribution from a joint
tortfeasor.  "The now established rule that contribution is apportioned according to the relative
culpability of each tortfeasor was first articulated in Dole v. Dow Chemical, 30 N.Y.2d at 153,
331 N.Y.S.2d at 391-92, 282 N.E.2d at 294-95.  The holding in that case was subsequently
codified . . . N.Y.Civ.Prac.Law § 1402."  Goodkin v. United States, 773 F.2d 19, 23 (2d Cir.
1985).  See Insurance Co. of North America v. Historic Cohoes II, 879 F.Supp. 222, 228
(N.D.N.Y. 1995).

with much less contacts, for substantive law.  As there is no contract between Man on the one hand and Lashbrook and Somerville on the other hand, the only basis for indemnification would be as provided under common law.

The Court finds a conflict between Pennsylvania law and New York law on the issue of indemnification.  Pennsylvania law is clear that there is no common law right to indemnification if the party seeking indemnification is even partially at fault.  "Under Pennsylvania law, it is well-established that indemnification for a party's own negligence will not be inferred and must be stated expressly, clearly, and unequivocally in an indemnity clause."  Jacobs Constructors, Inc. v. NPS Energy Services, Inc., 264 F.3d 365, 371 (3d Cir. 2001).  "The law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and equivocal language." Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 7 (1990).  "The common law right of indemnity is not a fault-sharing mechanism between one who was predominantly responsible for any injury and one whose negligence was relatively minor.  Rather, it is a fault-shifting mechanism, operative only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the action that occasioned the loss.  If, however, the party seeking indemnification is actively negligent or is guilty of an independent act of negligence that also is the cause of the underlying injuries, indemnity is not available as a matter of law." Foulke v. Dugan, 212 F.R.D. 265, 270 (E.D. Pa. 2002) (citing Consolidated Rail v. Youngstown Steel Door Co., 695 F. Supp. 1577, 1581 (E.D. Pa. 1988)).

On the other hand, New York law uses a more flexible test, depending upon what is fair

and equitable under the circumstances in determining whether common law indemnification should apply in a particular case.  See Mas v. Two Bridges Associates, 555 N.Y.S. 2d 669 (N.Y. 1990).[6]

Given the Third Circuit's recent confirmation that the "totality of circumstances" must govern the choice of law in a case under Pennsylvania conflict principles, see Hammersmith v. TGI Ins. Co., 480 F.3d 220, (3d Cir. 2007), the Court finds that Pennsylvania's substantive law provides the appropriate choice of law and its rules on indemnification should govern.  There do not appear to be any facts, other than the location of Man's headquarters, which point to New York law.  The geographic focus of this case is Pennsylvania, because this is where PAAMCo was headquartered and where Lashbrook and Somerville communicated, in large part, and visited as part of their role as directors, and as pointed out above, their contacts with Pennsylvania are sufficient to give this Court jurisdiction.

Applying Pennsylvania law, the Court concludes that a finding of liability against Man would establish Man's fault and not allow Man to seek indemnity from the directors of the Offshore Fund.  If Man is found liable to Plaintiff, then under applicable Pennsylvania law, it would have no claim for indemnity against Lashbrook and Somerville.

An appropriate Order follows.

---

[6]Neither New York nor Pennsylvania allow for indemnification for intentional torts.  See Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 448 (3d Cir. 2000), and Austro v. Niagara Mohawk Power Corp., 66 N.Y.2d 674, 676 (1985).

-11-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM | : | CIVIL ACTION |
| FOR PHILADELPHIA ALTERNATIVE ASSET | : | |
| MANAGEMENT COMPANY, LLC, AND ITS | : | |
| PARTNERS, AFFILIATES, SUBSIDIARIES AND | : | |
| RELATED ENTITIES, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| MAN FINANCIAL INC., THOMAS GILMARTIN, AND | : | NO. 06-1944 |
| UBS FUND SERVICES (CAYMAN) LTD. | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN WALLACE, EDWARD GOBORA, DAVID | : | |
| LASHBROOK and SCOTT SOMERVILLE, | : | |
| Third Party Defendants | : | |

**ORDER**

AND NOW, this  2nd  day of October, 2007, based on the foregoing Memorandum

No. 3, it is hereby ORDERED that the Motion for Summary Judgment by Third-Party

Defendants David Lashbrook and Scott Somerville (Doc. No. 300) is GRANTED as to Man

Financial, Inc.'s claim for indemnification, but is otherwise DENIED.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-1944 Hodgson v. Gilmartin\Harmelin v. Man 06-1944 - Memo no. 3 summary judgment.wpd