IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN J. HARMELIN, RECEIVER AD LITEM | : | CIVIL ACTION |
| v. | : | |
| MAN FINANCIAL INC., et al. | : | NO. 06-1944 |

_____

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION | : | CIVIL ACTION |
| v. | : | |
| PAUL M. EUSTACE, AND PHILADELPHIA ALTERNATIVE ASSET MANAGEMENT COMPANY, LLC. | : | NO. 05-2973 |

### MEMORANDUM RE: APPROVAL OF SETTLEMENT

**Baylson, J.**                                                                                               **December 28, 2007**

On December 20, 2007, pursuant to notice, the Court held a hearing in connection with the Motion for Settlement filed by the Receiver Ad Litem, Man Financial, Inc. ("Man") and Thomas Gilmartin (Doc. No. 465). All counsel for the parties were present together with several other counsel for objectors and investors, the Receiver, C. Clark Hodgson, Jr., Esquire, and the Receiver Ad Litem ("RAL") Stephen J. Harmelin, Esquire. On December 24, 2007, an Order approving the Settlement was entered (Doc. No. 492). This Memorandum will explain the reasons.

At the beginning of the hearing, Magistrate Judge Strawbridge reviewed the process by

which the $75 million settlement was achieved.[1]  Magistrate Judge Strawbridge related that the settlement was the result of hard-fought, good-faith bargaining among the parties, that he had no basis to suspect any type of collusion or conflict of interest on the part of anyone, and based on his detailed knowledge of the case, he believed the settlement was fair and reasonable to the investors.

Counsel for the RAL offered into evidence the Declaration of the RAL, (Exhibit "B" to the Motion) and offered him for cross examination to any other counsel or party present.  No request for cross examination of Mr. Harmelin was made.  Accordingly, the Court received his Declaration which summarizes the process by which he reached settlement with the settling Defendants, and related his opinion that the settlement was fair and reasonable.

Counsel for the RAL presented a Supplemental Submission in Further Support to the Settlement Agreement which had been filed on December 17, 2007, (Doc. No. 479) which provided significant additional benefit to the investors, and also contained the approval of the Joint Liquidators, subject only to approval by the Cayman Islands court, which is anticipated.

Counsel for the Commodities Future Trading Commission ("CFTC") also endorsed the settlement and all of its provisions.  (N.T. 66-67).

The Court reviewed various objections that had been filed and also heard argument on behalf of one objector, Anglo-Irish Bank, (Suisse) (Doc. No. 465) represented by Martin Kaminsky, Esquire, a member of the New York bar.  Mr. Kaminsky's principal objection is that

---

[1] Magistrate Judge Strawbridge deservedly received from counsel, and from the undersigned, significant thanks for the great amount of skill, time and effort which he had put into the settlement process, extending over many months, with numerous telephone and in-person conferences.

Man should not secure the benefits of the joint tortfeasor release which had been proposed as part of the settlement agreement, because it was not a joint tortfeasor and also its alleged wrongdoing was so severe that it should be paying a greater percentage of the investor losses before a joint tortfeasor release should be approved as part of the settlement. Mr. Kaminsky was aware that this Court's prior Orders had concluded, in connection with the disposition of the various summary judgment motions, that there was evidence that would allow a jury to conclude that Man was a joint tortfeasor. Mr. Kaminsky argued that even if Man was a joint tortfeasor, the settlement amount was not sufficient to the investors to allow the Court to approve a settlement that included the benefits of a joint tortfeasor release for Man. Mr. Kaminsky argued that Man should only get a credit for the settlement amount it is paying to the RAL, to be deducted from any future judgments against Man. A joint tortfeasor release protects Man from any liability to a joint tortfeasor, including any other party in this case.

At the hearing, the Court also understood that the objections that had been filed by the individuals who are currently third-party Defendants in the action against Man would likely be resolved in the near future.

1. Legal Standards for Approval of Settlement

The legal standards that apply in the context of the approval of a settlement of this nature, secured by an equity receiver appointed by the Court, who is acting for the benefit of third parties, here the funds and investors in the Offshore Fund and other funds, as designated in the Settlement Agreement, is analogous to the standards most often applied in a class action or a bankruptcy context.

The Third Circuit has set forth a nine factor test in Girsh v. Jepson, 521 F.2d 153, 157

(3rd Cir. 1975), as follows:

>(1) the complexity and expense and likely duration of the litigation;
>
>(2) the reaction of the class to the settlement;
>
>(3) the stage of the proceedings and the amount of discovery completed;
>
>(4) the risks of establishing liability;
>
>(5) the risks of establishing damages;
>
>(6) the risks of maintaining the class action through the trial;
>
>(7) the ability of the Defendants to withstand a greater judgment;
>
>(8) the range of reasonableness of a settlement fund in light of the best possible recovery;
>
>(9) the range of reasonableness of a settlement fund in light of all the attended risks of litigation.

In considering these factors, the Court is personally aware of the complexity of this case, as it has been pending for two and one-half years, with numerous pretrial conferences, discovery disputes, and very detailed summary judgment motions, supported by numerous depositions transcripts and exhibits.  I am also aware of the expense, having been asked to approve the fees and expenses of counsel for the Receiver, RAL, and other parties, generally with full approval of the investors.  The fact that the case had gone on for so long, with trial scheduled for early 2008, is some evidence of the complexity of the case.  If it had not been settled, the case would have surely consumed at least one month of trial time, to be followed by a prolonged period for post-trial motions and the inevitable appeal.

The investors in the various funds, although not a "class" in the context of Rule 23, Fed.

R. Civ. P., are similar to class members, but the RAL has a unique status in the law, with broad responsibility and obligations. See Phelan v. Middle States Royal Court, 154 F.2d 978, 991 (2d Cir. 1946). The investors, except for the very few objectors, (and only counsel for one objector appeared at the hearing) appear to be favorably disposed towards the settlement. Substantial discovery has been completed. Although the Court has not reviewed the many expert reports, the testimony of the many experts each party has retained would consume a large portion of any trial. Although the court has previously found, in disposing of the summary judgment motions, that there was substantial evidence that could warrant a jury finding in favor of the RAL and against Man and Gilmartin, such a conclusion is by no means certain, as Man had many defenses to the RAL's claims, any one of which may have resulted in a defense verdict.

Man is reputed to be a very substantial financial services firm, but the Court is not aware of its ability to withstand a damages verdict in the amount the RAL was seeking.

The total amount of investments in these funds of approximately $250 million. As a result of the freeze order entered by Judge Padova at the beginning of the case and other efforts by Mr. Hodgson to collect various assets, approximately $75 million was initially secured for the benefit of investors, and approximately $42 million of that total has previously been distributed to investors. Thus, the current action being prosecuted by the RAL could achieve potential compensatory damages of approximately $175 million. The Man settlement, at $75 million, is 43 % of this amount. As noted at the hearing, such a settlement amount is a larger percentage of total potential damages than is common in most class action settlements, which also require Court approval. Even if the RAL did secure a liability verdict, the amount of damages that might be allocated against Man and Gilmartin by a jury was open to significant dispute.

On the range of reasonableness in light of all the attended risks of litigation, the Court finds that the amount that Man is paying is reasonable. In this regard, the Court relies heavily on observations of Magistrate Judge Strawbridge as expressed at the settlement hearing and also on the experience of Mr. Harmelin, an esteemed corporate lawyer in the Philadelphia legal community, who previously served as the chief executive of a public company, Publicker Industries, and brought to the task of serving as RAL his significant legal and business judgment. The Court is also aware that Mr. Harmelin reached out to and met personally with many investors, investor groups, and investor representatives, including the joint liquidators of the Offshore Fund in the Cayman Islands. In conclusion, this is not an ordinary commercial lawsuit but one brought by a court-appointed equity receiver representing broad groups, including the funds themselves, and the investors in the funds.

When this case was being prosecuted by Mr. Hodgson, the original Receiver, he and his counsel, the Stradley Firm acted appropriately, aggressively, and successfully in seeking broad discovery from Man (and the other defendants), and these efforts were continued when Mr. Harmelin, and the Dilworth Law Firm, as co-counsel with the Stradley Firm, took over the case. The Court saw the fruits of all counsels' discovery skills in the summary judgment papers, as reflected in five separate opinions. Although the Court noted some contentions at the beginning of the case between Mr. Hodgson and the CFTC, these appear to have been resolved and the litigation thereafter proceeded smoothly, including the transfer of responsibility from Mr. Hodgson to Mr. Harmelin. The Court also notes that litigation continues against other parties, and whether those claims are settled or litigated, there is still the prospect that additional recoveries will be achieved by the RAL on behalf of the investors.

2. <u>The Bar Order</u>

One of the significant issues raised at the hearing is whether the Court should include a Bar Order as part of the Order approving the settlement.  Counsel for the settling parties argued vigorously in favor of such an Order, because they would not otherwise secure "peace" from other litigation if any investors were able to institute their own suit against Man, potentially in other, including foreign, jurisdictions.  Mr. Kaminsky also argued against the Bar Order, even though his written objections did not state this ground for objection.

There was some discussion at the hearing as to whether the settlement agreement was contingent on the Court's entry of the Bar Order, with counsel for Man asserting it was contingent, but counsel for RAL expressing some doubt.

The Court's Order approving settlement includes the Bar Order.

The Court believes that the Bar Order is appropriate in this case for several reasons.  First, as noted above, the RAL has personally had communications with a large number of the investors or investor groups, and the Joint Liquidators, and has received wide approval for the settlement with Man and Gilmartin.  Secondly, the Receiver has documented numerous communications that have gone out from him and his counsel to the investor group over the course of this litigation, keeping them posted on major developments.  In addition, the Receiver had set up a website where investors could get information, and could quickly see the contents of Court Orders and other documents and keep track of this litigation by accessing the website.  Third, the Court had approved notice of the proposed settlement to all of the investors, which included in the notice a statement that the Bar Order would be sought, precluding the filing of any other claims.  There were no objections to this provision.  Fourth, the Court notes that in the

two and a half years since Mr. Hodgson was appointed as Receiver and despite all the communications that have gone forth, and the website, and the absence of any Order precluding an investor from filing their own lawsuit, no investor has done so.  Last, the Statute of Limitations for the most likely claims an investor could make, i.e. negligence and breach of fiduciary duty, has expired.  Thus, the likelihood of any such claim being made under all the circumstances is extremely remote, and essentially nil.  The promise of "peace" has undoubtedly justified Man in offering the very substantial settlement amount of $75 million.  The prospect of other litigation would undoubtedly have reduced this amount.    For these reasons, the Court does not believe that the entry of the Bar Order will, in any realistic sense, preclude any investors rights, but it does give the settling parties the assurance of peace and eliminates any future claim that might be filed out of spite or for some other vindictive or improper reason.

In a similar case, the United States District Court for the District of New Jersey entered a bar order enjoining potential claimants and concluded it was fair and, given the difficulties that the claimants faced in bringing individual claims, the bar order actually led to a higher settlement value on the case:

> The Court finds that the Receiver established this settlement is in the best interest of the Receivership estate, and that federal law and public policy favor the entry of the Bar Order to facilitate settlement of this matter.  In addition, the Court is satisfied that the Receiver established that the Bar Order is fair to Shasta members, and will not prejudice them.  Specifically, the Receiver notes that individual claims by Shasta members would be difficult to pursue for various reasons, including problems with standing, statute of limitations, and privity issues.  In short, the Receiver demonstrates that the Bar Order will lead to a higher settlement value, and therefore a larger recovery for claimants than would otherwise be available without the Bar Order.

*Commodity Futures Trading Commission v. Equity Financial Group,* Civil No. 04-1512

2007 WL2139399 at *2 (D.N.J. July 23, 2007) (Kugler, J.).[2]

It is also relevant to note that with the Court's approval of the Settlement Agreement in this case, the CFTC filed an Order in proceedings instituted pursuant to 7 U.S.C. § 6 of the Commodities Exchange Act, as amended, making findings and imposing remedial sanctions against Man in the amount of $2 million, and against Gilmartin in the amount of $250,000, plus the imposition of certain remedial steps that must be taken by Man, and also securing an Agreement from Mr. Gilmartin, among other things, that he will never apply for registration with the CFTC again or act as an employee, officer or principal of any registrant. In addition, Man has made changes to its supervisory structure, policies and procedures. The CFTC Order notes that Man and Gilmartin have consented to the entry of the Order without admitting or denying the findings of fact and conclusions of law in the CFTC's Order (CFTC Doc. 08-02, entered December 26, 2007). The Court notes that the CFTC did not make any public disclosure of its proceedings against Man and Gilmartin until after the approval of the settlement in this case.

A Bar Order is sometimes analogous to the "cram-down" provisions in the Bankruptcy Code, which permits a plan to be confirmed over the objection of a class of creditors provided the plan adequately protects the remaining creditors. There is debate in the case law over whether the "cram-down" provision may be applied to allow confirmation in situations where no secured creditors accept the plan. Matter of Perimeter Park Inv. Associates, Ltd., 697 F.2d 945

---

[2]There have been some instances where mandatory class actions have been ordered, principally under Rule 23(b)(1)(2), FED.R.CIV.P. However, most cases hold a mandatory class action is not appropriate when damages are being sought, because of the Seventh Amendment right to a jury trial. See Ortiz v. The Fireboard Corporation, 527 U.S. 815 (1999). See also In re School Asbestos Litigation, 789 F.2d 996 (3rd Cir. 1986), vacated by 791 F.2d 920 (3rd Cir. 1986).

(11th Cir. 1983).  Bankruptcy Judge Haines stated that the "cram-down" provisions of the Code are an expression of Congressional intent regarding the importance of reorganization values even in the face of considerable creditor opposition, provided those creditors' interest are appropriately protected.  <u>In re DN Associates</u>, 144 B.R. 195, 200 (1992) (citing legislative history).

Considering the facts and all of the above authorities, together with the remedial provisions and intent of the statute under which the RAL was appointed in this case, relating to the powers of an equity Receiver and the Commodities Futures Trading Commission, 7 USC § 2, the court finds that the Bar Order is an essential for the success of the settlement.  The investors have been fully protected.

For these reasons, and other reasons stated on the record at the hearing, the Court concluded that the Settlement Agreement should be approved.

BY THE COURT:

S/Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-1944 Harmelin v. Man\Harmelin v. Man - Memorandum Motion for Settlement.wpd